UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____
                                   )
PAUL R. HALLAM II,                 )
                                   )
    Plaintiff,                     )
                                   )
        v.                          )    C.A. No. 18-50-WES
                                   )
Ashbel T. WALL, Director of        )
Rhode Island Department of         )
Corrections; JUSTIN AMARAL,        )
Lieutenant at Rhode Island         )
Department of Corrections;         )
and JEFFERY ACETO, Warden at       )
Rhode Island Department of         )
Corrections,                       )
                                   )
    Defendants.                    )
_____)

## ORDER

WILLIAM E. SMITH, Chief Judge.

Before the Court is Defendants' Motion to Dismiss Amended Complaint (ECF No. 19) ("Defendants' Motion"), to which Plaintiff filed an objection (ECF No. 34). For the following reasons, Defendants' Motion is denied.

I. Factual Background

This case arises out of a disciplinary incident which occurred while Plaintiff was incarcerated at the Adult Correctional Institution ("ACI"). According to Plaintiff, on April 5, 2017, Defendant Amaral, a corrections officer, acting without provocation or justification, doused Plaintiff with an entire can of industrial-grade pepper spray and then placed him into solitary confinement,

without giving Plaintiff an opportunity to decontaminate. (Am. Compl. ¶¶ 13-16, ECF No. 16.) To justify this abusive behavior, Defendant Amaral then "booked" Plaintiff for two infractions, both of which were subsequently dismissed as unfounded. (Id. ¶¶ 17-18.) According to Plaintiff, Defendant Amaral had no legitimate basis for using pepper spray against him and his decision to "empty[] the entire canister and drench[] [Plaintiff] in caustic chemicals was purely sadistic." (Id. ¶ 19.) Plaintiff also claims that he complained repeatedly to Rhode Island Department of Corrections ("RIDOC") staff about his need to receive medical attention for the deleterious effects of the pepper spray, but that his "medical needs were decidedly ignored by medical staff at the facility." (Id. ¶ 20.) Plaintiff alleges that RIDOC's willful ignorance of his condition caused him to be rushed to Rhode Island Hospital, where he received emergency surgery and an extended stay in the Intensive Care Unit. (Id. ¶¶ 21-22.)

The Complaint includes three counts. Count I is brought under 42 U.S.C. § 1983 and alleges that Defendant Amaral used excessive force in violation of Plaintiff's Eighth Amendment rights when he doused Plaintiff in pepper spray. (Id. ¶¶ 23-24.) Count II is also brought under 42 U.S.C. § 1983 and claims that Plaintiff's detention in solitary confinement violated his due process rights under the Fourteenth Amendment. (Id. ¶ 25.) Count III alleges that Defendant

Amaral's actions amounted to assault and battery causing severe and lasting physical injuries and mental anguish. (Id. ¶¶ 26-28.)

Defendants have moved to dismiss Count II of the Complaint[1], alleging that Plaintiff's placement in solitary confinement does not constitute an "atypical and significant hardship" and, therefore, does not amount to a violation of his due process rights. (Defs.' Mot. 7 (citing Sandin v. Conner, 515 U.S. 472, 484 (1995)).) In response, Plaintiff argues that "for the inmate to be framed and thrown into solitary confinement on a false pretextual basis with no meaningful opportunity to decontaminate following the excessive and unwarranted dousing in caustic chemicals" must clearly constitute an "atypical hardship" in that it is a "dramatic departure from ordinary prison life, as required under Sandin." (Pl.'s Mem. in Supp. of Obj. 2-3, ECF No. 34.)

II. Applicable Law

In ruling on a motion to dismiss, the Court must "accept the well-pleaded facts as true, viewing factual allegations in the light most favorable to the plaintiff." Rederford v. US Airways, Inc., 589

---

[1] Defendants initially sought dismissal of Plaintiff's Count I as well, arguing that none of the Defendants had been served in their individual capacities and, therefore, they were not subject to suit under 42 U.S.C. § 1983. See Will v. Michigan, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). However, Defendants have since stipulated that they were properly served in their individual capacities on August 20, 2018. As such, the Court denies Defendants' Motion to Dismiss Count I as moot. (See Joint Stip. as to Defs.' Mot. to Dismiss, ECF No. 29.)

F.3d 30, 35 (1st Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)).

In the context of inmates' rights, the Due Process Clause will not be implicated unless a Complaint plausibly alleges the loss of a liberty interest based on the "impos[ition of] [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

III. Analysis

The Supreme Court has held that placement in disciplinary segregation, without more, is not sufficient to implicate a liberty interest. See Id. at 485; see also Pona v. Weeden, C.A. No. 16-612S, 2017 WL 3279012, at *1 (D.R.I. June 29, 2017), Report and Recommendation adopted, C.A. No. 16-612 S, 2017 WL 3278874 (D.R.I. Aug. 1, 2017). This is so because "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Sandin, 515 U.S. at 485. As such, disciplinary segregation only implicates a liberty interest if placement lasts for an extremely long time, see

4

Arauz v. Bell, 307 Fed. Appx. 923, 930 (6th Cir. 2009) (inmate placed in segregation for 693 days), or if the conditions of segregated confinement present a "dramatic departure from the basic conditions of [the inmate's] sentence," see Wilkinson v. Austin, 545 U.S. 209, 222 (2005) (quoting Sandin, 515 U.S. at 485); see also Harden-Bey v. Rutter, 524 F.3d 789, 792 (6th Cir. 2008) ("In deciding whether changes to an inmate's conditions of confinement implicate a cognizable liberty interest, both Sandin and [Wilkinson] considered the nature of the more-restrictive confinement and its duration in relation to prison norms and to the terms of the individual's sentence."); Perkins v. Kansas Dept. of Corr., 165 F.3d 803, 809 (10th Cir. 1999) (reversing a district court's dismissal of a plaintiff's due process claim, despite the lack of evidence regarding the duration of plaintiff's detention in segregation, because the plaintiff alleged sufficient facts that the conditions of his confinement were extreme and unusual as compared with other inmates). Additionally, the shorter the inmate's detention in solitary confinement, the more relevant the conditions of confinement become. See Iqbal v. Hasty, 490 F.3d 143, 161 (2d Cir. 2007) ("Segregation of longer than 305 days . . . is sufficiently atypical to require procedural due process protection . . . [but] [w]hen confinement is of an intermediate duration . . . 'development of a detailed record' of the conditions of the confinement relative to ordinary prison

5

conditions is required.")(quoting Colon v. Howard, 215 F.3d 227, 232 (2d Cir. 2000).

For example, in Wilkinson, the Court held that placement at a supermax facility violated the plaintiffs' due process rights because the conditions of confinement were so far afield from the inmates standard conditions that they implicated the inmates due process rights. 545 U.S. at 224. The conditions of confinement at issue included: the indefinite duration of placement in a supermax facility, the prohibition on virtually all human contact, the complete absence of outdoor recreational time and extremely limited indoor recreational time, and the fact that placement in supermax disqualified an otherwise eligible inmate from parole consideration. Id. The court observed that "any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." Id. Assessing all of these factors together, the court concluded that placement in supermax constituted a dramatic departure from the inmates' regular sentences and, therefore, the inmates "ha[d] a liberty interest in avoiding assignment to [supermax]." Id.

Although Plaintiff has not provided specific facts indicating how long his detention in solitary confinement lasted, the Complaint plausibly alleges that the conditions of Plaintiff's detention were a "dramatic departure" from ordinary prison life. Id. at 223; Sandin,

515 U.S. at 484. First, Plaintiff alleges that he was not permitted to decontaminate after being placed in solitary confinement, that he was barred from seeing a doctor for his pepper spray-related injuries, and that this ultimately forced him to undergo an emergency surgery and stay for an extended period of time in the intensive care unit at an off-site hospital. (Am. Compl. ¶¶ 20-22.) It strains credulity to imagine that the "ordinary incidents of prison life" should be understood to include emergency medical procedures and prolonged in-patient care due to the disciplinary actions of correctional officers. Wilkinson, 545 U.S. at 223. Second, Plaintiff alleges that, prior to his detention in solitary confinement, he was doused with an excessive amount of pepper spray based on trumped-up (and ultimately disproved) charges of misconduct. Because the Supreme Court has noted that all of the conditions of confinement must be "taken together" when assessing whether an inmate's due process rights have been violated, Id. at 224, the events leading up to Plaintiff's placement in solitary confinement are necessarily relevant to determine whether he had a liberty interest in avoiding solitary confinement in the first place. Here, the allegation that Officer Amaral took extreme and decidedly unwarranted disciplinary action against Plaintiff prior to placing him in solitary confinement supports Plaintiff's contention that his due process rights were violated. (Id.)

7

IV. CONCLUSION

Taking the Complaint as a whole and viewing all of the facts alleged in the light most favorable to Plaintiff, at this juncture, the Court finds that Plaintiff has alleged sufficient facts to support the claim that his detention in solitary confinement, as well as the events leading up to that detention, violated his due process rights. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570. After discovery is complete, it may be that the facts of this case will fall squarely under the cover of Sandin; but for now, at the motion to dismiss stage, the facts as alleged are sufficient to allow the count to remain.

For the reasons stated herein, the Court DENIES Defendants' Motion to Dismiss Amended Complaint (ECF No. 19).

IT IS SO ORDERED.

_/s/ William E. Smith_
William E. Smith
Chief Judge
Date: November 30, 2018